J-S22036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                   :           PENNSYLVANIA
                                   :
              v.                         :
                                   :
                                   :
DEVON JARRETT BUSHOR            :
                                   :
          Appellant           :    No. 960 MDA 2024

Appeal from the Judgment of Sentence Entered June 11, 2024
In the Court of Common Pleas of Clinton County Criminal Division at
No(s): CP-18-CR-0000240-2022

BEFORE:   LAZARUS, P.J., BOWES, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:     **FILED: OCTOBER 17, 2025**

Appellant, Devon Bushor, appeals from the judgment of sentence entered in the Clinton County Court of Common Pleas on June 11, 2024. After review, we affirm.

The relevant facts and procedural history are as follows: On November 1, 2019, Kyndall Byers, the victim in this case, was an eighteen-year-old college student visiting a friend who lived at Lock Haven University. N.T., 3/24/23, at 36-39. They began drinking alcohol in the friend's dorm before going to a local party and arriving "observably drunk." **Id.** at 42. The friend vomited and left the party, while the victim remained. **Id.** at 46. The victim was stumbling and falling through the kitchen, where she met Appellant, on

---

[*] Former Justice specially assigned to the Superior Court.

her way to the bathroom. *Id.* at 47, 49. Appellant, a student at the university, along with two other students who testified at trial, went upstairs with the victim where she was given water. She was seen spilling the water and stumbling. *Id.* at 50. On her way back down the stairs, the victim fully fell down the steps. *Id.* at 51. Shortly thereafter, the victim began vomiting inside and outside on the porch. She returned inside to a couch in the quiet part of the house and rested there while continuing to vomit into a trash can. *Id.* at 55-56.

When a female friend came back to the couch to check on the victim about an hour later, the victim was seen in another location with Appellant. *Id.* at 60. The victim returned to the couch and the friend noticed her shirt was pulled up, her pants were unbuttoned, and there were bloody scratches on the victim's hip. *Id.* at 65. The victim testified that she had woken up to the Appellant being on top of her and seeing her pants and underwear around her ankles. *Id.* at 189-90. Her teeth and lips were numb but she testified that she felt pain inside of her because she was a virgin. *Id.* at 189, 188. Until that night, the victim had never been kissed or touched intimately, had never dated anyone or held anyone's hand, and had never had any sort of sexual encounter. *Id.* at 199-200.

The friend and the victim left the party and the victim's demeanor went from an "expressionless," "blank stare" to "hysterical" and "crying" as she seemingly began to remember the incident. *Id.* at 68, 72-73. The victim does

not recall arriving back to her friend's dorm room, but she remembers crying and saying "he raped me" to her friends and sister. *Id.* at 196. The victim's sister came to the university dorm to pick her up around 4:00 AM and called the university and the police the following day. *Id.* at 198; N.T., 3/27/23, at 8. Following a Title IX investigation, the Lock Haven Police charged Appellant with various sex offenses on April 18, 2022.

Following a two-day jury trial held March 24 and March 27, 2023, the jury convicted Appellant of one count of sexual assault (F2) and one count of indecent assault, lack of consent (M2).[1] Appellant was sentenced to an aggregate term of fifty-seven months to 144 months of incarceration, followed by three years of probation. Appellant was classified as a sexually violent predator (SVP) following a hearing which occurred on February 13, 2024. No post sentence motions were filed, but on July 5, 2024, Appellant filed a timely notice of appeal. Appellant filed a concise statement pursuant to Rule 1925(b) on July 25, 2024, and the trial court filed its 1925(a) opinion on August 29, 2024. This appeal follows.

Appellant raises four issues for our review, verbatim:

I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO PROVIDE AN APPROPRIATE INSTRUCTION TO THE JURY ON THE RELATIONSHIP BETWEEN INTOXICATION AND CONSENT, WHEN THE JURY HAD A QUESTION ON THAT PRECISE ISSUE, AS THE JURY HAD AN OBLIGATION TO ASSESS THE

---

[1] 18 Pa.C.S.A. § 3124.1; 18 Pa.C.S.A. § 3126(a)(1).

VICTIM'S INTOXICATION AND/OR DEGREE OF INTOXICATION IN DETERMINING HER CAPACITY TO CONSENT?

II. WHETHER THE EVIDENCE AT TRIAL WAS INSUFFICIENT AS A MATTER OF LAW TO ESTABLISH MR. BUSHOR'S GUILT BEYOND A REASONABLE DOUBT ON THE CHARGES OF SEXUAL ASSAULT AND INDECENT ASSAULT WHERE THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH THE VICTIM'S LACK OF CONSENT?

III. WHETHER THE TRIAL COURT IMPOSED AN ILLEGAL SENTENCE FOR THE CRIMES OF SEXUAL ASSAULT AND INDECENT ASSAULT WHERE SUCH CHARGES, WHICH WERE BASED UPON THE SAME CRIMINAL EPISODE, SHOULD HAVE MERGED FOR SENTENCING?

IV. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT PRECLUDED MR. BUSHOR FROM OFFERING EXPERT TESTIMONY AND PROHIBITED THE INTRODUCTION OF THE EXPERT REPORT AT THE SVP HEARING, WHERE SUCH PRECLUSION WAS AN INAPPROPRIATE SANCTION AND THERE WAS NO PREJUDICE TO THE COMMONWEALTH?

Appellant's Br. at 4.

Appellant's first issue is that the trial court erred in failing to provide an appropriate jury instruction in response to a question from the jury. Appellant's Br. at 15. Specifically, the jury asked for clarification on the consent defense as to the definition of intoxication. N.T., 3/27/23, at 240. Upon receiving the jury's inquiry, the trial court met in chambers with counsel and reviewed the question. *Id*. Counsel for both parties agreed that there was no definition included in the charge for "intoxication." *Id*. Accordingly, the court concluded it was not at liberty to expand on the definition since it was a

standard instruction. *Id.* at 241. The jury was instructed to review the charge as provided and make its own determination and findings as to what constitutes intoxication. *Id.* at 242. Notably, both counsels stated on the record that this instruction was acceptable. *Id.* at 241.

Preliminarily, we note that Appellant failed to object to the trial court's jury charge. Under Pa.R.A.P. 302(a), "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). It is well settled that the failure to object to the jury charge before the jury retires for deliberation renders the issue waived for appellate review. *See Commonwealth v. Schierscher*, 668 A.2d 164 (Pa. Super. 1995); *Commonwealth v. Byrd*, 598 A.2d 1011 (Pa. Super. 1991). Rule 647 of the Pennsylvania Rules of Criminal Procedure specifically addresses the failure of an appellant to object to the jury instructions. Under Pa.R.Crim.P. 647(C), "no portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate." Pa.R.Crim.P. 647(C); *see also Commonwealth v. Kampo*, 391 A.2d 1005, 1008 (Pa. 1978) (holding that where appellant did not object to omission in jury charge before deliberations, issue was not preserved for review); *Commonwealth v. Martinez*, 380 A.2d 747, 750 (Pa. 1977) (holding that where judge asked if counsel had any exceptions or additions to jury charge and counsel replied that he had none, appellant waived issue of alleged error in charge); *Commonwealth v. Betz*, 664 A.2d 600, 606 (Pa.

Super. 1995) (holding that specific objection must be made before deliberations in order for challenge to jury charge to be preserved for appellate review). Because Appellant failed to object to the jury charge, Appellant has waived this challenge.

Appellant's second issue challenges the sufficiency of the evidence. Specifically, Appellant challenges the "without consent" elements of his sexual assault and indecent assault convictions. Appellant's Br. at 24. He argues that the Commonwealth had the burden to prove that the victim's degree of intoxication rendered her incapable of consent, and that it failed to satisfy that burden. Appellant's Br. at 24-25.

This Court's standard of review of a challenge to the sufficiency of the evidence is well-settled:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. ***Commonwealth v. Moreno***, 2011 PA Super 25, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. ***Commonwealth v. Hartzell***, 2009 PA Super 237, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. ***Moreno***, supra at 136.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011).

A person commits sexual assault "when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S.A. § 3124.1. And,

A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and the person does so without the complainant's consent[.]

18 Pa.C.S.A. § 3126(a)(1).

Pennsylvania courts have held that when a victim is physically and mentally impaired at all relevant times during a sexual encounter, the victim lacks the capacity to consent to the sexual encounter. *See Commonwealth v. Diaz*, 152 A.3d 1040 (Pa. Super. 2016) (affirming a conviction for sexual assault where the victim testified she was so intoxicated that she was "blacking in and out" during the assault); *see also Commonwealth v. Erney*, 698 A.2d 56, 59 (Pa. 1997) (finding the victim had an inability to consent when the victim's intoxication resulted in her being partially unconscious during the assault and lacking awareness of the events).

Here, the trial court stated,

The victim testified at trial that on the date of the incident, November 1, 2019, she was 18 years of age. That night, she traveled an hour and forty-five minutes to visit with her high school friend who was attending Lock Haven University. The victim and her friend began drinking in her friend's dorm room. The victim consumed Seagram's with a shot of vodka and three additional shots of vodka. The victim and her friend then decided to attend an off-campus party and before leaving the dorm room, the victim mixed cream soda with four additional shots of vodka. The victim was not experienced with alcohol, having only consumed alcohol five times previously. This evening was the first time that she had mixed alcoholic beverages.

The victim does not remember exiting the dorm but remembers flashes of the walk over to the off-campus party. During the walk over, the victim was falling and described herself as being really drunk. The victim did not remember walking into the house hosting the party, but did remember being inside and described it as a frat house. The victim was extremely intoxicated and as she was being brought to another part of the house, she fell down a flight of stairs and was escorted to a separate area of the house where only frat brothers were permitted. Although she was witnessed falling down the stairs, the victim did not remember the fall. The victim then remembers being on a couch in a dark room. The victim's friends were trying to get someone to come to the party and pick her up. The victim continued to sit on the couch and someone brought her a glass of water. All of the victim's friends went to other activities in the house and the victim was left sitting on the couch drinking water.

The victim then remembers the Defendant sitting next to her. The victim did not remember having a conversation with the Defendant. The victim did not remember the Defendant telling her his name and did not remember what the Defendant was wearing. The next thing the victim remembers the Defendant was on top of her and kissing her and she was unable to feel her lips or teeth. The next thing she remembers is seeing her pants and underwear around her ankles with the Defendant on top of her thrusting into her. The victim does not remember walking to another part of the room, and does not remember having any discussions with the Defendant about having sex. The victim described the event as an out of body experience. The victim believes she was crying and could not move. The victim realized that she was having sex and could feel the Defendant's penis inside of her body. The victim then does not recall leaving the room where the assault occurred.

The victim's level of intoxication was confirmed by a number of Commonwealth witnesses.

Tr. Ct. Op. at 6-7 (paragraph spacing altered).

This court has reviewed the record and we agree that sufficient evidence was presented that the victim lacked consent during the sexual encounter. Specifically, the victim's lack of awareness of the events surrounding the

assault and her lack of physical sensation indicate significant intoxication. Contrary to Appellant's assertion, the Commonwealth was under no obligation to establish a particular degree of intoxication in the victim. The jury was free to draw reasonable inferences from the testimony that the victim—who was inexperienced with alcohol—consumed multiple shots of liquor, was seen falling down the stairs, vomited, and could not feel her teeth or lips. The jury was free to assign weight to the testimony that the victim was, at other times on the night in question, described as coherent and "seem[ingly] okay" after consuming water. The jury also may infer from their own experiences and knowledge if the victim's level of intoxication rendered her unable to consent. *See Commonwealth v. Hughes*, 865 A.2d 761, 801 (Pa. 2004) ("it is proper for a jury to draw upon knowledge and common experience to reach a conclusion"). Because the Commonwealth presented sufficient evidence for the jury to find the "without consent" element to be satisfied, we affirm Appellant's convictions of sexual assault and indecent assault.

Appellant's third issue is that the trial court erred in not merging his sentences for sexual assault and indecent assault, resulting in him serving an illegal sentence. "In order for two convictions to merge for purposes of sentencing: (1) the crimes must be greater and lesser-included offenses, and (2) the crimes charged must be based on the same facts." *Commonwealth v. Gatling*, 807 A.2d 890, 899 (Pa. 2002). In determining whether two offenses are greater and lesser included offenses, a Court must consider

"whether the elements of the lesser crime are all included within the elements of the greater crime, and the greater offense includes at least one additional element which is different, in which case the sentences merge, or whether both crimes require proof of at least one element which the other does not, in which case the sentences do not merge." *Commonwealth v. Anderson*, 650 A.2d 20, 24 (Pa. 1994).

The crime of sexual assault provides, in pertinent part: a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent. 18 Pa.C.S.A. § 3124.1. The crime of indecent assault provides, in pertinent part:

> (a) Offense defined.--A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and: (1) the person does so without the complainant's consent[.]

18 Pa.C.S.A. § 3126. In other words, sexual assault requires proof of (1) sexual intercourse or deviate sexual intercourse (2) without consent. Indecent assault requires (1) indecent contact, (2) for the purpose of arousing sexual desire, (3) without consent.

Appellant seems to suggest that because engaging in vaginal penetration meets the "intercourse" element of sexual assault and the "indecent contact" element of indecent assault, the single act upon which

- 10 -

indecent assault is predicated has already been taken into account by sexual assault and therefore should merge. However, that analysis only accounts for the requirement that "the crimes arise from a single criminal act." 42 Pa.C.S.A. § 9765. The other requirement for merger, that "all of the statutory elements of one offense are included in the statutory elements of the other offense," has not been satisfied. The above offenses each require proof of an element that the other does not; sexual assault requires "intercourse" while indecent assault requires "indecent contact." And, even if the "indecent contact" *is* intercourse, indecent assault also requires some proof that the contact was for the purpose of arousing sexual desire, an element not included in sexual assault. Thus, the two offenses at issue are not greater and lesser included offenses. Accordingly, Appellant's third issue is without merit.

Appellant's fourth issue is that the trial court erred in not admitting his expert report at the hearing to determine Appellant's classification as an SVP. Specifically, Appellant contends that at the hearing, he provided the Commonwealth with his expert report. The Commonwealth objected to the timing of the disclosure, and the trial court precluded the introduction of the report into evidence. Appellant's Br. at 34. Appellant filed a motion for reconsideration of the trial court's decision to exclude the expert report. The trial court issued an order and opinion denying the same on April 9, 2024. To begin, we recognize that

> [a]n appellate court may reverse a trial court's ruling regarding
> the admissibility of evidence only upon a showing that the trial

court abused its discretion. Because the trial court indicated the reason for its decision our scope of review is limited to an examination of the stated reason.

**Commonwealth v. Horvath**, 781 A.2d 1243, 1246 (Pa. Super. 2001).

It is within the trial court's discretion to disallow a defendant from presenting the testimony of an expert witness for failing to comply with discovery deadlines to produce an expert report. In **Commonwealth v. Radecki**, 180 A.3d 441 (Pa. Super. 2018), this Court found that the trial court did not abuse its discretion in disallowing the defendant to present the testimony of his medical expert because the defendant had failed to comply with several discovery deadlines to submit an expert report prepared by the doctor. There, it was unclear from the record if the doctor ever even prepared an expert report. **Id.** at 453. On the other hand, in **Linker v. Churnetski Transportation, Inc.**, 520 A.2d 502, 505 (Pa. Super. 1987), this Court held that the trial court abused its discretion in precluding certain expert testimony even though the identity of the witness was not disclosed until the day of trial, and even though the Appellee would be prejudiced by the testimony. In balancing the facts and circumstances of the case in **Linker**, the Appellant's witness was so important to its case that even though there was no disclosure of the witness, and even though the testimony prejudiced the Appellee, the trial court abused its discretion by precluding it. **Id**.

Similarly, in **Commonwealth v. Curnutte**, 871 A.2d 839 (Pa. Super. 2005), we emphasized that an individual convicted of a sex crime has a

statutory right to present an expert witness at an SVP hearing, and held that the trial court abused its discretion in denying the appellant's request for appointment of a psychological expert to assist him at the hearing. *Id.* at 844. However, in that case, the appellant was deprived of an expert witness because he was indigent and could not afford his own expert witness, and we found that the court erred in refusing to appoint one for him given that "our courts have consistently recognized the right of indigent defendants to have access to the same resources as non-indigent defendants in criminal proceedings." *Id.* at 842.

Here, the trial court gave the following explanation in its opinion:

[On] March 27, 2023, the [trial court] directed the Pennsylvania Sexual Offender Assessment Board to conduct an assessment of the Defendant to determine whether he should be classified as a sexually violent predator. On June 22, 2023, the Commonwealth filed a praecipe for hearing to determine sexual violent predator status of the Defendant pursuant to 42 Pa.C.S.A. §9799.24(e).

On June 23, 2023, the Court conducted a hearing to address the Commonwealth's praecipe. The same date, June 23, 2023, the Court granted the Defendant's continuance request and continued sentencing until September 19, 2023. On September 12, 2023, the Defendant filed a further continuance asserting that the Defendant was securing a second opinion sexual offender assessment and required an additional sixty (60) days to complete. The request was granted and the matter was continued until November 28, 2023.

The Defendant filed an additional application for continuance on November 22, 2023, once again indicating that the Defendant's expert had not completed the assessment and was not available to testify on November 28, 2023 and needed an additional thirty (30) days to review a report being subpoenaed. This request was denied and all parties were ordered to appear on November 28, 2023.

- 13 -

On November 28, 2023, the Defendant's trial counsel failed to appear in person but instead sent an associate to request a further continuance. The associate (Attorney Diemer) advised the Court that the Defendant's expert report was still in the process of preparation and that an approximate fourteen (14) additional days would be needed to complete the report. The Court permitted the Commonwealth to present its expert and provided the Defendant the right to reserve cross-examination until a later date.

At the conclusion of the November 28, 2023 proceeding, the Court granted defense counsel's oral motion for continuance and the matter was scheduled for further hearing on February 13, 2024. Defendant did not provide the Commonwealth with a copy of the Defendant's expert report until the commencement of the proceeding on February 13, 2024.

* * *

The Defendant was provided five (5) months of preparation time between the request for hearing filed June 22, 2023 and the November 28, 2023 Court proceeding. Despite a number of continuances, the Defendant did not cross-examine the Commonwealth's expert until February 13, 2024, nearly eight (8) months after the initial request for hearing. For reasons which remain unexplained, the Defendant made no effort to provide the Commonwealth with the Defendant's own expert report until the commencement of the February 13, 2024 hearing. As the Commonwealth argues in its response, the Defendant had eight (8) months to prepare for cross-examination of the Commonwealth's expert while the Commonwealth was provided a mere ten (10) minute recess to read and review the Defendant's expert report. The Court found that this time limitation was insufficient for the Commonwealth to properly prepare for the cross-examination of the Defendant's expert witness.

* * *

The Court must also be cognizant of the victim's right to have this matter proceed expeditiously. There is now a nine (9) month gap between the Commonwealth's request for hearing and the publication of this Opinion and Order.

Tr. Ct. Op., 4/9/24, at 2-3, 4, 5 (paragraph breaks altered).

Balancing the facts and circumstances of this case and considering the prejudice to each party as it must do, the trial court acted within its discretion in precluding Appellant's expert report. Unlike in **Linker** where, without the expert's testimony the appellant had no case, the expert testimony here would have been used at an SVP hearing. Contrary to Appellant's assertion that this decision constitutes "reversible error," an SVP hearing is a post-conviction proceeding which could not have impacted the result of Appellant's trial. Unlike in **Curnutte**, Appellant here is not indigent and was represented by private counsel. Additionally, an assessment as to whether Appellant should be classified as an SVP was already conducted by a member of the Sexual Offender Assessment Board (SOAB) who considers a minimum of fifteen statutory factors, so Appellant's expert report would merely have served to supplement the assessment. Thus, there is not great prejudice to Appellant. However, Appellant had eight months to prepare for cross-examination of the Commonwealth's expert while the Commonwealth was provided only ten minutes, greatly prejudicing the Commonwealth.

Further, it was on November 28, 2023 that Appellant and his counsel were required to appear and present their expert report and testimony. **See** Tr. Ct. Order 11/27/23, at 1. Just like in **Radecki** when there was no indication on the record if the expert report had even been prepared at the time the appellant failed to comply with the court's order, the trial court here would have had no indication leading up to the November 28, 3023, proceeding if

- 15 -

Appellant had even secured an expert. Then, on the same date that the court ordered them to appear, and after having already requested three continuances over a period of six months, counsel for Appellant identified the expert by name and stated on the record on November 28, 2023 that the report was in the works and would be completed within fourteen days. N.T., 11/28/23, at 30. Thus, the Commonwealth and the trial court reasonably would have expected Appellant to have obtained the report by mid-December 2023. Given that the hearing was scheduled for February 13, 2024, had Appellant shared his expert report in mid-December as was implied, the Commonwealth would have had two months to prepare. Instead, the report was dated February 7, 2024, and not shared until February 13, 2024, at the time of the hearing. Accordingly, the trial court did not abuse its discretion in precluding the eleventh-hour expert report following four requests for continuances over eight months. Accordingly, we affirm.

Judgment of sentence affirmed.

Judge Bowes joins the majority decision.

President Judge Lazarus files a Concurring and Dissenting Memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>10/17/2025</u>